United States Courts
Southern District of Texas
FILED

FEB 0 6 2020

David J. Bradley, Clerk of Court

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN SAIN, et al., | § | |
| | § | CIVIL ACTION NO. |
| Plaintiffs, | § | 4:18-cv-04412 |
| | § | |
| v. | § | |
| | § | |
| BRYAN COLLIER, et al., | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF, WITH ORDER AND APPENDIX**

**TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................. 1

TABLE OF AUTHORITIES ........................................................................................... 2

I.    RELEVANT FACTS............................................................................................... 4

II.   OBJECTION TO MOTION TO DISMISS ........................................................... 5

III.  ARGUMENT & AUTHORITIES ......................................................................... 9

  A.  IRREPARABLE INJURY: ............................................................................9

  B.  ACTUAL IMMINENT INJURY: ...............................................................10

  C.  CANNOT BE PREVENTED OR FULLY RECTIFIED: ............................11

  D.  CHRONOLOGY OF RETALIATORY EVENTS:......................................11

IV.  RETALIATION .................................................................................................. 29

  A.  SPECIAL CONSTITUTIONAL RIGHT ...................................................30

  B.  DEFENDANTS INTENT TO RETALIATE: .............................................32

  C.  CASUAL CONNECTION: .........................................................................33

  D.  NO ADEQUATE REMEDY AT LAW ......................................................33

  E.  LIKELIHOOD OF SUCCESS ON THE MERITS .....................................35

  F.  BALANCE OF HARDSHIPS......................................................................36

  G.  EFFECT ON THE PUBLIC INTEREST ....................................................37

V.   CONCLUSION ................................................................................................... 39

VI.  PRAYER.............................................................................................................. 40

# TABLE OF AUTHORITIES

**Cases**

*Allah v. Silverline Inc.*, 229 F.3d 220 (3rd Cir., 2000) ................................................. 31

*Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008).......................................................... 5

*Bluefield Water Ass'n v. City of Starkville*, 577 F.3d 250, 252 53, (5th Cir. 2009)...................... 34

*Bounds v. Smith*, 97 S. Ct. 1491, 1494 (1977).............................................................. 29

*Brewer v. Simental*, 268 S.W.3d 763, 774 (Tex. App-Waco, 2008).......................................... 37

*Brewer v. Wilkinson*, 3 F.3d 816, 821, n5 (5th Cir. 1993) ................................................ 30

*Burgess v. Moore*, 39 F.3d 216, 218, (8th Cir. 1994) ..................................................... 30

*Calhoun v. Harcone*, 312 F.3d 730 (5th Cir., 2002)....................................................... 32

*Chacon v. Ganata*, 515 F.2d 922, 925, (5th Cir. 1975) ................................................... 10

*Chambers v. Baltimore & Ohio R.R. Co.* 28 S. Ct. 34, 35 (1907) ..................................... 12, 29

*Christopher v. Harbury*, 536 U.S. 403, 415 n. 12 (2002) ................................................. 28

*Cody v. Weber*, 256 F.3d 764, 768, (8th Cir. 2001)........................................................ 31

*Cole v. Collier*, 4:14-cv-01689, (S.D. Tex., Houston Div., 2018)................................... 33, 34

*Crawford-El v. Britton*, 523 U.S. 5 74, 588, (1998) ..................................................... 28

*Crowder v Sinyard*, 884 F.2d 804, 811 (5th Cir. 1989)............................................... 12, 29

*Crows v. Petrosky*, 509 F. Supp 1199, 1204 (W.D. Pa. 1981)............................................... 12

*Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338, (5th Cir. 1981) ................... 11

*Dodson v. Core Clinic*, U.S.D.C. (M.D. Tenn.), case no. 3:17-cv-00048; 2018 U.S. Dist. LEXIS 171132 ................................................................................................ 34

*Doran v. Salem Itin. Inc.*, 422 U.S. 922, 931-32, (1975) ................................................ 34

*El Rod v. Burnes*, 427 U.S. 347, 379, (1976)............................................................. 11

*Ex Parte Hull*, 61 S. Ct. 640 (1941) .................................................................... 29

*Gates v. Collier*, 501 F 2d. 1294 at 1319 (5th Cir. 1972) ................................................ 7

*Goff v. Nix*, 113 F.3d 887, 890-92, (8th Cir. 1997)....................................................... 31

*Hamilton v. Love*, 328 F. Supp. 1182 at 1194, (E.D. Ark. 1971) .......................................... 7

*Harrison v. Springdale Water & Sewer Comm'n*, 780 F.2d 1422, 1428 (8th Cir. 1986) .............. 29

*Hart v. Harrison*, 343 F.3d 726, 764, (5th Cir. 2003) ............................................... 28, 30

*Houston v. Lack*, 108 S. Ct. 2379, (1988)............................................................... 29

*Hudson v. Palmer*, 104 S. Ct. 3194, 3212 (1984)......................................................... 12

*Jackson v. Proconier*, 789 F.2d 307, 310-11 (5th Cir. 1986) ............................................ 28

*Leggett v. Comer*, 280 Fed. Appx. 333, (5th Cir. Tex. 2008) ........................................ 12, 37

*Lewis v. Casey*, 518 U.S. 343, 351, (1996)............................................................... 11

*Matthews v. Eldridge*, 96 S. Ct. 893 (1976)............................................................. 36

*McCathy v. Madigan*, 503 U.S. 140, 153, (1992) .......................................................... 28

*Morello v. James*, 810 F.2d 344, 346 (2nd Cir. 1987) .................................................... 29

*Morris v. Powell*, 449 F.3d 682, 684, (5th Cir. 2006) .......................................... 4, 30, 31

*N. CA. Power Agency v. Grace Geothermal Corp.*, 469 U.S. 1306, 1308, (1984)...................... 32

*O'Donnell v. Harris City*, Texas, 2017 WL 1735456 81, 83 ............................................... 35

*Opulent Life Church v. City of Solly Springs*, 697 F.3d 279, 297, (5th Cir. 2012)...................... 35

*Parker v. Carpenter*, 978 F.2d 190, 192-93, (5th Cir. 1992)......................................................... 31

*Parker v. McKeithen* 488 F.2d 553, (5th Cir. 1974) ...................................................................... 6

*Roda Drilling Co. v. Seigal*, 552 F.3d 1203, 1220, (10th Cir. 2009)............................................ 10

*Rozecki v. Gaughan*, 459 F. 2d 6, 8, (1st Cir. 1972) ...................................................................... 7

*Ruiz v. Estelle*, 679 F.2d 1115, 1153, (5th Cir. 1982) .................................................................. 37

*Ryland v. Schapiro*, 708 F.2d 967, 971 (5th Cir. 1983)............................................................... 12

*Sigafus v. Brown*, 416 F.2d 105, 107 (7th Cir. 1969).................................................................. 29

*Smith v. Sullivan*, et al, 553 F 2d. 373, 378 (U.S. App. 5th Cir. 1977)......................................... 7

*Taylor v. Sterrett*, 532 F.2d 462, 475 (5th Cir. 1976) ......................................................... 12, 30

*Thadeus-X v. Blattga*, 175 F.3d 378 (6th Cir., 1998)................................................................... 31

*Thomas v. Evans*, 880 F.2d 1235, 1241-42, (11th Cir. 1989) ....................................................... 31

*Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, (1989)................................................. 32

*Wilson v. Illinois S. Ry.*, 263 U.S. 574, 576-77, (1924)............................................................... 33

*Wilson v. Thompson*, 593 F.2d 1375, 1387 (5th Cir. 1979) ........................................................ 30

*Winter v. Natural Res. Def. Counsel, Inc.*, 555 U.S. 7, 20, (2008)................................................ 9

*Woods v. Brewer*, 60 F.3d 1161, 1166, (5th Cir. 1995) ............................................................... 37

*Yakus v. United State*, 321 U.S. 414, 440, (1944)...................................................................... 35

## Statutes

42 U.S.C. § 1983.............................................................................................. 12, 15, 32, 37

## Rules

Fed. R. Civ. P. ....................................................................................................................... 4

## Constitutional Provisions

(1) First Amendment........................................................... 3, 4, 6, 7, 11, 19, 22, 27, 30, 38

(14) Fourteenth Amendment........................................................................... 12, 28, 38

(4) Fourth Amendment ................................................................................................ 38

(5) Fifth Amendment ........................................................................................... 6, 28, 38

(8) Eighth Amendment ................................................................................... 6, 7, 34, 38

U.S. Constitution........................................................................................................ 9, 36

Plaintiffs, operating Pro se in the above styled and numbered cause, move for the Court to

provide relief from the Defendants' violations of Plaintiffs' **First Amendment** Rights, specifically,

Access To Courts (ATC).

Plaintiffs find that without the Court's intervention they will experience unsurmountable

obstacles; in conferring between Plaintiffs, making progress in continuing strategy development,

conducting research necessary for responses and pleadings, composing and editing of documents, publishing at their outside service, conducting re-edits, complying with any rule based or Court ordered deadlines, and meeting filing expectations and deadlines. Plaintiffs must also include in their publishing calculations, the back and forth time necessary to send and receive documents to/from their copy service compounding these issues, the fact that physical service of Defendants documents and Court orders seldom reach the Plaintiffs without a nominal weeks delay due to mailing, receipt, and issuance to the Plaintiffs. This week, without the latest filing, is always time lost to the Plaintiffs due to Fed. R. Civ. P. (a)(1)(A) Rules stating that the time to respond or reply starts at the time of filing.

Defendants misconduct, both direct and indirect, violates the Plaintiffs **First Amendment** Rights, their freedom of speech, their Access To Courts, and their right to redress. Plaintiffs have and are experiencing an escalating pattern of violations that would "chill" a person of "ordinary firmness" detailed for the Court as follows, *Morris v. Powell*, 449 F.3d 682, 684, (5th Cir. 2006).

## I.  RELEVANT FACTS

A.    Plaintiffs filed the initial complaint on November 20, 2018, Doc. 1, and their First Amended Complaint on January 14, 2019, Doc. 25.

B.    Inmate Legal Assistants in this litigation include: Howard Harris, (#01940432); Matthew Heimsness, (#01289614); William Taylor, (#01461308); and Adam Walker, (#01897234); each attended regular Luther Unit Law Library sessions, and conferred, assisted, and participated in the above litigation pursuant to TDCJ policy, *See*: Doc. 96-2, Ex. B, p.3; *also*, Ex. 144.

C.     All Plaintiffs and Inmate Legal Assistants collectively researched, investigated and brought
       the litigation of this suit, as demonstrated by the entries into the Luther Unit Law Library
       "Sign-In Log" and Inter-Office Communication, IOC, dated December 5, 2018, Ex. 144.

D.     In order for all Plaintiffs and Inmate Legal Assistants to continue conferring, assisting and
       participating in the ongoing litigation of this case requires approval from each Unit
       Warden.

E.     Plaintiffs filed a prior Motion Requesting Emergency Injunction to stop Defendants'
       Efforts to Relocate Named Plaintiffs, and to Stop Defendants' Inmate Abuse, Retaliation,
       and Reprisals for Filing this Suit, Doc. 14.

F.     On January 4, 2019, the Court DENIED Plaintiffs' motion primarily because they did not
       meet the four criteria under *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008), Doc. 15.

G.     Plaintiffs filed numerous grievances, along with affidavits in the Court raising the issues
       of restrictive, retaliatory and harassing conduct by Defendants *See*: Ex. 49, Ex. 52-55, Ex.
       103, Ex. 138B, Ex. 141, Ex. 169, Ex. 118, Ex. 132, Ex. 133, Ex. 147, and Ex. 151.

H.     Plaintiffs Capuchino, Cummings, Gullett, Sain, Smith, and Wilson were hastily and
       expeditiously relocated to the Pack Unit.

## II.     OBJECTION TO MOTION TO DISMISS

Defendants' Motion To Dismiss, Doc. 141, is wildly deceptive and totally off point. By
hurriedly relocating Plaintiffs to the Pack Unit, Defendants attempt to preclude Plaintiffs gaining
of their Class Certification and violating Plaintiffs' civil rights. But just as Defendants dismissed
their own rules and policy (Three-Year Plan, Doc. 59, Ex. A), they can again go around the Court

and relocate Plaintiffs into another non-climate-controlled prison as soon as, and if, the Court rules in their favor.

As detailed below, this is a planned legal maneuver which allows the Defendants to avoid correcting the Constitutional violations existent at the Luther Unit. The Defendants in effect are asking the Court to do their dirty work so they can continue to operate status quo in violation of Luther inmates Constitutional Rights.

Defendants have produced multiple policy exhibits that atoll the benefits gained by "Following The Rules". Their day to day operations stress "By the Rules" for all inmate matters. Yet, the policies they so highly acclaim are the plan to redemption for minimizing heat-related illness, injury, and death are easily put aside and ignored when they moved and isolated the Named Plaintiffs to the Pack Unit and eliminated their **First Amendment** Access to Courts Rights and their **Fifth Amendment** Rights to Due Process, not to mention the inmates whom they assigned higher heat-sensitivity scores (HSS) whom are awaiting cool-beds.

Defendants actions are clearly a deceptive legal maneuver to rid themselves of their responsibility to correct the **First** and **Eighth Amendment** violations they implemented, maintained and continue to propagate at the Luther and Pack Units.

"Defendants, however, in an effort to conserve resources that would otherwise be expended on this litigation have voluntarily accommodated the Plaintiffs' requests." Doc. 141, pg. 5, para 9. The Courts have found on numerous occasions that the correction of Constitutional violations is not to be ignored due to a lack of funding. Violations are violations and are not to be ignored.

Likewise in *Parker v. McKeithen* 488 F.2d 553, (5th Cir. 1974), Cert Denied, 419 U.S. 838, 95 S.CT. 67 (1974) it was declared : There are several cases from this circuit in which claims

under 1983, alleging violations of **Eighth Amendment** rights, arising from negligence of state officials have been recognized. Even if it is held there is a deprivation of rights the Defendants complain of lack of funds to implement the trial Court's order. This Court recognizes that some of the improvements will be costly but as stated in *Hamilton v. Love*, 328 F. Supp. 1182 at 1194, (E.D. Ark. 1971) "inadequate resources can never be an adequate justification for depriving any person of his Constitutional rights."

*Rozecki v. Gaughan*, 459 F. 2d 6, 8, (1st Cir. 1972) held: "Humane considerations and constitutional requirements are not, in this day, to be measured or limited by dollar considerations."

Finally in *Gates v. Collier*, 501 F 2d. 1294 at 1319 (5th Cir. 1972) has said "Where state institutions have been operating under unconstitutional conditions and practices, the defense of fund shortages and the inability of the District Court to order appropriations by the State Legislature, have been rejected by the Federal Courts." *Smith v. Sullivan*, et al, 553 F 2d. 373, 378 (U.S. App. 5th Cir. 1977).

Plaintiffs will prove through discovery and testimony that every human, be it inmate or staff, are exposed to extreme risk due to the Constitutional violations, Defendants have refused to correct involving extreme heat and humidity and its effects toward heat-related illness, injury, and death at the Luther Unit.

Plaintiffs, rights to Access To Courts (ATC), is a mandate of Free Speech authorized and guaranteed by the **First Amendment**. Defendants at both the Luther and Pack Units are currently prohibiting the Plaintiffs, both named and those similarly situated, and their Legal Assistants from meaningful and timely contact which for all intent and purposes stops all joint development of strategy and document development. The ATC Supervisors at both the Luther and Pack Units in

conjunction with the ATC Area Director have changed decades of procedures and freedoms of access, assembly, and speech all since the inception of this lawsuit and the naming of Bryan Collier, James McKee, and TDCJ as Defendants.

Motion For Class Certification, Doc. 31, Doc. 72, Doc. 93, Doc. 95, Doc. 101, and Doc. 114 are active motions before the Court. The Court, in Doc. 120 specified as it had previously that, Class Certification was denied at this time. The Court also highlighted Plaintiffs lack of Class Counsel as a necessary hurdle that the Plaintiffs must cross for consideration.

Plaintiffs' are painfully aware of their lack of formal and informal legal training and are so far outside the bounds of their experience as Pro se litigants as demonstrated in their many mistakes and shortcomings concerning their filings.

The Plaintiffs, following the guidance of the Court filed for and received In Forma Pauperis (IFP) status as GRANTED in Doc. 131, Doc. 132, and Doc. 138.

On the first day of this suit, November 20, 2018, after the original complaint was filed, Doc. 1, Plaintiffs filed what they thought was an important document, Special Notice to The Court With Request to The Court - Pro Se Representation, Doc. 2, subsequently filing their First Amended Notice of A Upgraded Submission For The Court's Consideration, Doc. 26

Plaintiffs had originally filed specifically for the Courts Appointment of Counsel within Doc. 5, Doc. 30, and Doc. 47. Upon the publication of the Court's order, Doc. 120, Plaintiffs have refiled their Request For Counsel, Doc. 135, providing justification, need, self-search results, and submission and granting of IFP status noted above.

Surviving Defendants' Motion For Summary Judgment, Doc. 59, Plaintiffs Pro se without formal legal representation, are on the cusp of argument, and granting of Class Certification. At this crucial stage, Plaintiffs must have counsel to proceed as the Court addressed in Doc. 120.

### III.    ARGUMENT & AUTHORITIES

The Defendants have arbitrarily and capriciously, through their actions and omissions, and exercise of sovereign power and resources, retaliated against Plaintiffs and Inmate Legal Assistants in this litigation for the purpose of interfering with, harassing, punishing, delaying, pre-empting Plaintiffs strategies and/or otherwise penalize Plaintiffs as a result of participating in litigation, violating TDCJ policy, BP-3.81 and the protections of the U.S. Constitution, *See*: Doc. 96-2, Ex. B, p.2.

Plaintiffs must address the following equitable factors for granting injunctive relief: irreparable injury; no adequate remedy at law; a likelihood of success on the merits; the balance of hardships; and the effect on the public interest, *See*: *Winter v. Natural Res. Def. Counsel, Inc.*, 555 U.S. 7, 20, (2008).

### A.  IRREPARABLE INJURY:

Plaintiffs will likely suffer irreparable injury if Defendants are not restrained from: denying access to the courts; unauthorized confiscation of legal materials; harassing, restricting and impeding participation in this litigation and primarily retaliating against Plaintiffs; and the breaking up, disbanding, and separating Plaintiffs from each other and other potential class members. Additionally, Plaintiffs will likely suffer irreparable injury if Defendants are not required to return Plaintiffs to the Luther Unit in order to litigate this cause on behalf of each other and potential class members while the suit is pending. *Id.* at 22.

B.  ACTUAL IMMINENT INJURY:

First, an irreparable injury must be actual and imminent. To show that the injury is not speculative, it must be likely to occur before the Court rules on the merits, *See*: *Chacon v. Ganata*, 515 F.2d 922, 925, (5th Cir. 1975), *also*; *Roda Drilling Co. v. Seigal*, 552 F.3d 1203, 1220, (10th Cir. 2009). Here, the Court has not ruled on the merits and only just identified issues to be addressed, surviving summary judgment, on August 30, 2019 with a forthcoming order for a scheduling conference, Doc. 120.

Primarily, the dispersing and separating of Plaintiffs and potential class members is actual and imminent because, Plaintiff are required to counsel each other through the mail and only then upon the Unit Warden's discretion. This presents a unique conflict of interest. The Unit Warden, a Defendant in this action has control over when, where, and how the Plaintiffs confer, strategize and compose pleadings. As has been the case throughout the last year, the Defendants have found that just confiscating legal material in the absence of authority has the potential to stall, impede, harass and delay Plaintiffs in such a way that makes it extremely difficult to overcome. If Plaintiffs had this type of authority over the Defendants, they surely would object to the misconduct.

By and large, most of the responsive pleadings triggers a time period for a particular response. The injury is actual and imminent due to the secreted, isolated and seclusion of Plaintiffs, Inmate Legal Assistants and potential class members. For example, it is inconceivable how 6 to 10 inmates, scattered about the state could effectively correspond with each other to properly litigate the action when they may lose as much as 6 to 10 days of mail time alone. Notwithstanding the scattering of Plaintiffs from others, by the Defendants, works to subvert, undermine and stall Plaintiffs efforts to obtain a certification of a class action suit. In another suit, involving the general public, such misconduct as the Defendants would immediately be sanctioned by the Court. It is

manifestly apparent the scattering of Plaintiffs is for the purpose of frustrating and impeding the nonfrivolous claim regarding conditions of confinement previously outlined in the complaint, Doc 25, *See*: *Lewis v. Casey*, 518 U.S. 343, 351, (1996).

### C.  CANNOT BE PREVENTED OR FULLY RECTIFIED:

Next, an irreparable injury is one that cannot be prevented or fully rectified by a final judgment following a trial, *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338, (5th Cir. 1981), (irreparable injury is harm that cannot be undone by awarding of monetary damages). Additionally, if the Plaintiffs cannot be adequately compensated in damages, or if the Defendants would be unable to pay. *El Rod v. Burnes*, 427 U.S. 347, 379, (1976), (loss of right to **First Amendment**). In this instance, the Defendants have exercised their authority over Plaintiffs as correction officers to retaliate against and completely deny Plaintiffs their protected right for redress of grievances, in other words, Access To Courts, violating their **First Amendment** rights.

### D.  CHRONOLOGY OF RETALIATORY EVENTS:

TDCJ policy states in part, offenders may present any issue, including redress for improper conditions of confinement, and any other right protected by constitutional and statutory provisions, or by common law. Offenders may confer, about legal matters, subject to regulation of time, place, and manner necessary to maintain the security and order of the institution. Officers, employees, or agents of the TDCJ shall not interfere with, harass, punish or otherwise penalize any offender as a result of lawsuit, grievance, appeal, or other complaint about prison conditions or official misconduct, or for discussing with others or writing in accordance with TDCJ rules and regulations to others about actual or potential legal action or other forms of grievance or complaint, *See*: Doc. 96-2, Ex. B, p. 1, and Doc. 59, Ex. HH, p. 121 (p. 134 of 147).

Other Courts have held:

In *Crowder v Sinyard*, 884 F.2d 804, 811 (5th Cir. 1989), "the Constitution prohibits treating legal materials as contraband... it makes no sense to say that its seizure and destruction serves any legitimate institutional interest... and serves no purpose except harassment which is intolerable." *Hudson v. Palmer*, 104 S.CT. 3194, 3212 (1984); "confiscation of legal pleadings is an interference with access to Courts and constitutes the deprivation of a substantial constitutional right...", *Ryland v. Schapiro*, 708 F.2d 967, 971 (5th Cir. 1983), (citing *Chambers v. Baltimore & Ohio R.R. Co.* 28 S.CT. 34, 35 (1907).

When there is an ongoing pattern of denial or interference, actual injury need not be shown under 42 U.S.C. § 1983. Plaintiffs have provided direct evidence of Defendants motivation and alleged a "Chronology of Events" which retaliation is plausible. *Leggett v. Comer*, 280 Fed. Appx. 333, (5th Cir. Tex. 2008).

That right has also been found in the **Fourteenth Amendment** guarantees of procedural and substantive due process. *Id.* (5th Cir.).

Consequently, interference with access to the Courts may constitute the deprivation of a substantive constitutional right, as well as a potential deprivation of property without due process, and may give rise to a claim for relief under § 1983 *Id.*, p.972, 975.

Any deliberate impediment to access, even a delay of access, may constitute a constitutional deprivation. *Id.* p.972, 974. *See*: e.g. *Crows v. Petrosky*, 509 F. Supp 1199, 1204 (W.D. Pa. 1981); cf. *Taylor v. Sterrett*, 532 F.2d 462, 475 (5th Cir. 1976).

There are to many lengthy and voluminous acts of retaliation and misconduct to fully detail in this filing; As a result, and in the interest of brevity and the Court's valuable time and resources,

Plaintiffs present a concise, abbreviated chronology of the larger retaliatory events and misconduct associated with record exhibits as follows:

    a. July 28, 2018: CONFISCATION OF PLAINTIFFS' LEGAL MATERIAL FROM OFFENDER HOLMES.

This marks the date of the Luther Unit Staffs' engagement of hinderance, delay, and retaliation against Plaintiffs. Initially, Captain Brantly confiscates legal materials which were rightfully in possession of Offender Holmes and contained early drafts of this litigation and strategy.

Despite multiple grievances filed by the Plaintiffs, Captain Brantly refused to return the legal material even though offenders may possess other offenders legal work and assist in the litigation per BP-3.81, *See*: Doc. 96-2, Ex. B, p. l, and Ex. 52.

Additionally, the Court and Defendants have notice of the unauthorized confiscation, refusal to return and retaliatory efforts by the Luther Unit Staff recounted in Plaintiffs "First Amended Response to Defendants Motion For Summary Judgment, with Appendix and Order", Doc. 105, p. 76-77 § 6, Ex. 92.

Next, the "Notice of Confiscation of Legal Material", directed to Plaintiff Sain, advises him that "6 pages of suspected legal work" was confiscated as suspected contraband, *Id*. Ex. 53. This is contrary to TDCJ policy prescribing, legal material belonging to offenders are confidential and search is for "physical contraband such as weapons or drugs secreted within the legal materials." *See*: Doc. 96-2, Ex. B, p.9, § II. B. l.

The notice also states, the reason for removal is because "ownership of documents could not be established", Ex. 53. Here, the notice demonstrates a pretext to unduly disrupt and impede the litigation of this matter.

Primarily, ownership is not in question because Offender Holmes was in possession of the legal material when it was confiscated without authorization. Captain Brantly knows it is legal material because Holmes told her. Several times as she read and asked questions concerning certain passages. *Id.* Ex. 54 & 49.

Most importantly, after Offender Holmes alerts Brantly of the legal material, she has a duty to obtain written authorization from the Unit Warden or Asst. Warden prescribed in BP-3.81, Doc. 96-2, Ex. B, p.9, § II. B. 2.

The most glaring evidence of misconduct, unduly disruption and retaliation are established in the Notice of Confiscation itself, Ex. 53. TDCJ policy prescribes notice is to be served within 48 hours of the confiscation, Doc. 96-2, Ex. B, p.9 § II. B. 3. Here, the unauthorized confiscation by Brantly from Offender Holmes takes place on July 28, 2018, when ATC Supervisor C.

Spencer served Offender Sain August 8, 2018, 11 days after the confiscation. Notably, there is an absence of weapons or drugs confiscated, and disciplinary cases for such.

Predominately glaring is what can be accomplished during the 11-day lapse between confiscation and service of notice. To illustrate, discovery will show that some or all the legal materials were faxed to the Attorney Generals Office for obvious direction on how to proceed. These 11 days gives all involved the necessary time to decipher, investigate, and research Plaintiffs claims prior to filing of the complaint. This also gives the Luther Staff time to formulate a plan to systematically subvert, stall, and generally impede the progress of Plaintiffs during' the course of the impending proceedings. *See:* Ex. 223, for improper coding of grievances and additional injury in processing, adding further injury to Plaintiffs.

The prejudice sustained and endured by Plaintiffs from this 11-day passage of time has had a monumental effect to a far greater extent than has so far been explained. The legal materials were never returned to the Plaintiffs, the Luther Property Officer, Ms. Jackson, states they were lost/not returned when Ms. Spencer "borrowed" them from property and "Fed Ex'd" them to TDCJ ATC Supervisor in Huntsville. *See*: Ex. 53. This prejudice is further chronicled below and establishes retaliation by Defendants.

    b. November 18, 2018: OFFICER BROWN'S THREATENING AND PROVOKING
       MANNER TOWARDS PLAINTIFF SAIN.

After the 11-day lapse in time and a plan of retaliation is framed, word is out to Officers of the Luther Unit that, Plaintiffs are filing a § 1983 claim due to the conditions of their confinement. Shortly after the unauthorized confiscation of legal materials and a meeting of the minds in the 11 days following as set forth above. The officers marshaled a systemized effort of harassment, impediment and retaliation upon Plaintiffs.

This effort escalated to the point of overt physical and verbal threats by Officer Brown characterized in Plaintiff Sain's Step 1 & 2 grievances, Ex. 103.

First, in the Step 1, Sain documents the threatening and provoking manner of Officer Brown. While Sain was merely retrieving his supplies from a folder, Brown provokingly asks, "what are you lookin' at". This could not have been said with more contempt, hostility and antagonism in the tone of Brown's voice, nor his body language. Officer Brown then began clinching and unclenching his fists in a physically threatening manner. He then said with extreme animosity, "I know you can write your little grievances". This is in direct violation of TDCJ policy," ... officers ...shall not interfere with, harass, punish, or otherwise penalize any offender as a result of participation in litigation...", BP-3.81, Doc. 96-2, Ex. B, p 3. Notably, there was no

grievance pending against Officer Brown so his actions can only be described as arbitrary and capricious. As customary on most TDCJ Units, the Step 1 was indifferently and perfunctorily denied with no further action warranted, Ms. Brooks was the ATC Supervisor at the time.

Next, the Step 2 outlines the same details as above with a complaint of an inadequate investigation or lack of an investigation. Therein, the perfunctory stamp of denial is utilized again demonstrating the completely ineffective grievance process with the TDCJ and inadequate processes employed within.

By and large, the Step 2 paints a picture of Officer Brown's physical threats so extreme, Ms. Brooks and Sgt. Horn are prepared to pull their canisters of gas to be used on Brown himself.

After gaining control over Brown, Ms. Brooks and Sgt. Horn escort him to the Wardens Office and eventually write an incident report on Brown's misconduct in the Luther Unit Law Library. Captain Brantly eventually banishes Officer Brown from contact with anyone associated with the Law Library or entering its premises.

c.  December 5, 2018: INTER-OFFICE COMMUNICATION (IOC)

On this date, Ms. Brooks, Luther Unit Law Library Supervisor authorizes a roster of Offenders to possess and transfer legal materials associated with this litigation, *See*: Ex. 144.

d.  March 27 & April 28, 2019: TWO INSTANCES OF CAPTAIN BRANTLY'S RETALIATION

Initially, on these two dates, Captain Brantly singles out Plaintiff Sain for-minor perceived infractions. Most importantly, the disciplinaries Sain received included 6 weeks of suspended contact visits with family.

1.  Cubicle shakedown.

2. Stopping at commissary window - questions if Warden approved purchase of extra postage for mailing of responses with deadlines.

This disposition is extremely incongruous with the typical garden variety minor perceived infractions committed by Sain and characterized in Plaintiff's First Amended Response to Defendants Motion for Summary Judgment, *See*: Doc. 105, p 77, Ex. 55-59.

Next, Sain tried repeatedly to have Defendants' Attorney In Charge mediate and abate the situation. However, Brantly continued with the retaliation at every opportunity, *See also*: *Id.* p 77, Ex. 60, Ex. 61 & Ex. 62.

Finally, there is evidence the Defendants falsified a submission to the Court concerning the above disciplinary. This falsification includes the adding of a disciplinary code to enhance the violation without Sain's knowledge. For detailed description *See*: *Id.* p. 78. This falsification was committed long after this case was judged, and appeal completed.

e. May 9, 2019: LOSS OF PLAINTIFF'S LEGAL MAIL

Here, Plaintiffs had a filing due date of May 20, 2019. Plaintiffs submitted these documents to the Law Library Staff Officer on the afternoon of May 9, 2019, properly addressed and ample postage for Priority Mail 2nd Day service. The Law Library Staff Officer was observed taking the envelope to the mailroom on the morning of May 10, 2019. However, the package was lost, the Post Office had no record of receiving or processing the envelope, nor was the envelope returned to sender.

The above retaliation, and effort to impede and harass was explicitly detailed in Plaintiffs Response to Defendants Motion For Summary Judgment, *See*: Doc. 105, p 78, and Ex. 118.

f. June 11, 2019: EXTRA TIME IN THE LAW LIBRARY IS DENIED

This particular date distinguished the end of "extra time" in the Luther Unit Law Library. The Defendants, in an abuse of the spirit of their authority, reduced Plaintiff Sain's access with a rationale that "only" five two-hour sessions (ten hours) of access per week is required. ATC-30 and BP-3.81, allows for additional sessions (no limit is noted) justified and **based on need of offenders**, available space, and work ethics of the inmates within the law library, "**except for good cause requests are granted...during the period that an offender is not involved in programmatic activities.**" Doc. 96-2, p 5, B.2, and Doc 59, Ex. HH, p 124, B,2, (p l37 of 147). Also, ATC-30, Rev. 6, Nov. 1, 2012, p 4, II, B.2 states specifically, "under normal, routine circumstances, there is no justification to deny a general population offender additional Law Library access. The unit ATC Supervisor dictates the times for additional LL access. How much time is adequate will depend on the need of the offender, library habits of the offender, and space available in the Law Library."

Sain is medically unassigned so there is no requirement for programmatic activity when considering his extra time requests. He has directed the research, composition, and outside publication of this suit and entire Docket for the Plaintiffs. Sain had fully utilized the three daily sessions at no added burden to the operations or security risks within the Luther Unit. Sain's sessions were reduced with no warning or explanation of "good cause" other than, "you'll get your 10 hours per week, that's all I have to give you." For the past decade Sain and all others have taken advantage of multiple daily sessions that have always been available upon request and inmate needs within the Luther Law Library. Considering the obstacles encountered with repeated denials of Access to Courts and the Law Library directed towards Plaintiffs they sought assistance from the Court early in these proceedings when they specifically prayed for relief in their original complaint, *See*: Doc. 105, p 80-81, Ex. 118, and Doc. 25, para. 344(3).

g. JUNE 11, 2019 THRU AUGUST 5, 2019: PLAINTIFFS SOUGHT WARDEN MCKEE'S ASSISTANCE

Plaintiffs, attempting to resolve the many issues they newly encountered with Luther Law Library staff concerning their **First Amendment** Rights to ATC, they initiated a series of four letters to Warden McKee detailing the violations to policy and procedure, and requesting assistance. *See*: Ex. 198-202. Assistance nor reply were forthcoming.

h. August 15, 2019: AN ARBITRARY AND CAPRICIOUS DISCIPLINARY FOR USING THE REST ROOM

On this date, Plaintiff Sain was waiting to use the rest room in the Education Department. Sain had the usual and customary authorization to use the facilities. He was also accused of trafficking and trading with an inmate in one of the classrooms when the room was in fact empty other than a teacher. Sain received and was convicted of a major case for out-of-place with major punishment, later overturned, *See*: attached Ex. 169 for an explicit detailed narrative of this harassment and retaliation.

i. September 9, 2019: PLAINTIFFS SUPPLEMENT TO THEIR FIRST AMENDED RESPONSE TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT

In the Amended Response, Plaintiffs recount instances of retaliation by Defendants from: limiting discussion time in the Luther Unit Law Library; unauthorized confiscations of legal materials; Raise your hand for permission to speak to a table mate for five designated minutes. Restrictions from specific discussions such as are expected between Plaintiffs, approval requires submitting request for Articulation Form, Ex. 142, with a noted four-day approval delay, and if approved, then for only one hour together; to spurious disciplinaries for essentially engaging in Constitutional Right of Redress in the Courts for conditions of confinement at Luther, *See*: Doc. 123, p 2-4, Ex. 132-134, Ex. 138B-141, 144, Ex. 146-151, Ex. 194, Ex. 202, Ex. 229, Ex. 232, Ex. 236-249, Ex. 264, Ex. 267, and Ex. 268.

j.  September 27, 2019: PLAINTIFF SAIN RECEIVES DISCIPLINARY FOR
POSSESSING LEGAL MATERIALS

In this instance, Plaintiff Sain was in possession of legal materials including exhibits, evidence, and interrogatories concerning this suit. The materials, two I-60's are alleged to be contraband in the Disciplinary Report and Hearing Record, attached Ex. 208. Therein, Officer Miller contends materials are contraband because, they contain Offender Heimsness' information. Most importantly, the Defendants misconduct, harassment and retaliation is never more exemplified than this disciplinary. Indisputably, Sain and Heimsness are identified on the IOC roster as offenders authorized to possess each others' legal materials and the names and numbers are listed. Additionally, the two pieces of information Sain is convicted of having, Heimsness' name and ID number, are public information, and available to inmates per numerous Texas Gov't and TDCJ policies., *See*: Ex. 144 and attached Ex. 208, Ex. 209, Ex. 212-215. The legal materials were never returned.

k.  October 30, 2019: PLAINTIFFS ARE RELOCATED TO THE PACK UNIT

On this date, Plaintiffs Capuchino, Cummings, Sain, Smith, and Wilson were hastily told at 1245hrs. to pack all personal property by 1300hrs. because they are being relocated to the Pack Unit.

This move was so expedited, Plaintiffs did not have the opportunity to retrieve their in-process legal materials from other Inmate Legal Assistants. Additionally, support materials and related documents from similar suits utilized as research were also left behind in others care. This relocation was so rushed that Luther Staff did not even attempt to perform the normal functions when an inmate goes on chain. This misconduct would have the effect of precluding, harassing and retaliating against Plaintiffs. *See*: Ex. 193, Ex. 194, Ex. 226, Ex. 252, Ex. 253, and Ex. 264.

l.   November 1, 2019: THE UNAUTHORIZED CONFISCATION OF LEGAL
     MATERIALS CONTINUES AT THE PACK UNIT

Here, Plaintiff Sain files a grievance for confiscation of an exhibit in this litigation. Sain

has possession of a Table of Contents from the Access To Courts (ATC) manual posted on the

TDCJ web-site, and purchased via the FOIA and Open Records. Sain explains why he has

possession and where it is referenced in the pleadings of this case. The Law Library Staff Officer

Brown pays no attention to the explanation, confiscates the materials and fails to issue confiscation

papers or notice. This demonstrates the concerted effort between Staffs at Luther and Pack to

retaliate, harass, and impede Plaintiffs Access to the Courts. *See*: attached Ex. 197, and Ex. 210.

The confiscated legal material, the ATC Table of Contents, Ex. 197, was not returned to Sain and

the reply to the Step 1, 2020035230, Ex. 210, stated "...was confiscated due to item not purchased

through commissary." No, the item was purchased from ATC through the Freedom Of Information

Act (FOIA) and Open Records with their documentation and mailed to Sain via U.S.P.S. Plaintiffs

do not normally purchase Table Of Contents from the Commissary. Additionally, the Step 1 was

coded 512 normal contraband in error and should have been coded 712 for ATC legal materials.

This was addressed on an 1-60 to the Grievance Officer and via a Step 2.

Next, there is a grievance filed by Plaintiff Sain for the loss of legal material during the

hasty, expedited and precipitous relocation of Plaintiffs. Therein, outlines the reason for Luther

Unit Staff to inventory ALL materials rather than pack everything up on a whim. Or, this could

have been the whole purpose of the relocation to conveniently "lose" legal materials for the

purpose of impeding, retaliating, or punishing Plaintiffs for the litigation they are engaged in

against TDCJ. *See*: attached Ex. 211, and Ex. 219, *also*; Doc 105, p 80, para 3.

m.  November 3, 2019: PLAINTIFF CUMMINGS REQUESTS TO BE MOVED FROM
    TRUSTY CAMP TO MAIN BUILDING AT PACK

On this date, Plaintiff Cummings requested to be moved to the main building of the Pack Unit so he could have full access to the Law Library as well as the ability to confer with Co-Plaintiffs. Cummings complains of the "disadvantage" he is under by the retaliatory and harassing relocation, *See*: attached Ex. 205. The response is completely indifferent, restrictive, and designed to impede and/or seclude Cummings from the other Plaintiffs stating, "trusty camp offenders have indirect access." *See*: attached Ex. 206.

Then Cummings requests a session in the Law Library for conference with the other Plaintiffs. Here, Cummings is met with the same indifference, restrictions, and impediments stating, "Failed to qualify", "indirect access", and "request holdings list for items/materials to be delivered m-w-f." *See*: Ex. 207, Ex. 220-222.

To put this into context, Plaintiff Cummings has voluntarily requested to denounce his rightfully earned status as a Trustee and the privileges that atolls to move back into the main building, within the general population to secure his **First Amendment** Rights to Access To Courts. His rights and need for legal access are shown by his rebuked attempts and notices that he needs direct legal access. The Defendants have denied him of his Constitutional Rights not for the penological interests of the unit but by the direct misconduct of the Officials and Staff of TDCJ, the Defendants, in furthering their position in this lawsuit while harassing, punishing, and retaliating, specifically against the Plaintiffs.

Additionally, all Plaintiffs applied, utilizing the proper form, Request for Articulation, Ex. 142, all were allowed to attend a 0530 hrs. Pack Law Library session but were not allowed to meet or conference. No denials were formalized, vocalized, nor returned to Plaintiffs.

Relocation caused Cummings to forfeit the Lee College classes he attended, and the purchase price at Luther due to the Defendants sudden, mid-semester relocation. When Cummings inquired about continuing his college education on Pack, he was told this was only possible if he dropped this lawsuit. Ex. 195.

n. CONTINUING: ONGOING PACK UNIT DENIAL OF ACCESS TO COURTS AND UNIT LAW LIBRARY.

In this particular issue, Plaintiffs incorporate the policies procedures and exhibits set forth in sub-section "f." above, along with the general argument. The Pack Unit Law Library Staff have continued the systematic, collective, and concerted effort to impede, harass, stall, and generally interfere with Plaintiffs rights to redress their grievances through the courts and engage in the litigation to do so. In the interest of brevity, Plaintiffs let the following documents speak for themselves regarding the continuing retaliation by Defendants. Exhibits 194, 195, 205-207, 210, 211, 219-226, 252, 253, 257, 258, 264, 267, 270, and 271.

o. CONTINUING: DEFENDANTS' DENIAL OF COMMUNICATION BETWEEN PLAINTIFFS

After the initial relocation from Luther to the Pack Unit, and their inability to meet and confer in the Law Library. Plaintiffs' Sain, Cummings and Capuchino complained to Defendants that, they were unable to communicate with each other, and requested a means to do such through an Inmate Request to Officer (1-60), Ex. 196. The Defendants' contrived procedure was to have Sain, Cummings, and Wilson communicate with each other through the USPS mail, rather than just accommodate each with a visit to the Pack Unit law Library as per policy. The mailed communication between Sain & Cummings and Sain & Wilson has taken 21 and 31 days respectively for delivery and return, while neglecting Capuchino's request. *See*: Ex. 194, 195, 224,

225, 258, and 264. The final denial by TDCJ and specifically the Pack Unit for inmate to inmate legal mail occurred January 17, 2020. Ex. 274.

As lacking and slow as this method turned out to be, it nevertheless expired December 21, 2019 and has not been replaced. This leaves the plaintiffs with no viable, timely means to research, confer, strategize, compose, and sign documents as ORDERED by the Court in Doc. 150. The Plaintiffs are not able to timely secure signatures for the filing of papers with the Court.

p. CONTINUING: PLAINTIFF CUMMINGS' REQUEST CREDIT FOR TIME SERVED.

Cummings has suffered retaliatory measures and denial by the Defendants, concerning SCFO and Classification ignoring the Court Order provided multiple times to reduce his time in TDCJ. *See:* Ex. 257.

q. January 7, 2020: PLAINTIFFS HAVE BEEN PREJUDICED BY THE DEFENDANTS UNAUTHORIZED CONFISCATION OF PLAINTIFFS' EXHIBITS.

A brown envelope with the final edits and exhibits should have left the Pack Unit Monday January 6, 2020 in the morning mail going to Tim's Copy Service. The Pack Mailroom held it until Tuesday because they said it contained contraband, the three exhibits for our Reply and Motion that were to be filed upon receipt. These three exhibits from Plaintiff Capuchino are Ex.'s 192-194. The Service was to scan, publish, and file no later than Thursday January 9, 2020.

1) Staff would not return the Exhibits although they admitted that they were legal materials and Sain and Capuchino are both Plaintiffs. They said the rules governing what the Plaintiffs could exchange had changed, Sain no longer could mail other inmates documents or exhibits.

2)    Option 1: Sain could appeal (Ms. Sutton said she had already spoken to Huntsville who ordered the retention) but they would hold the brown envelope for up to two weeks until a decision was made or;

3)    Option 2: TDCJ would mail the brown envelope on January 8, 2020 and retain and file the six pages, one of which is a blank place-holder page, in the Pack Mailroom. TDCJ would not agree to Capuchino bringing a stamped addressed envelope and mailing "his" six pages from the mailroom, nor would TDCJ return them to Capuchino.

4)    Plaintiff Sain elected to forgo the appeal as it would hold up the numerous other documents in the brown envelope that required urgent processing. See: Ex. 270. The proverbial rock and hard place as BP-03.81, (Defendants' Doc. 96-2, Ex. B), states inmates can possess each others' legal materials and at the least require an ATC I-185 and I-186, legal confiscation notice and form prior to reading and confiscation. Policy requires that these two documents be generated for just such an incident that occurred here. Ex. 270.

I-202, p. 116, IV, content inspection, lists 13 rejection criteria, none of which list legal affidavits by offenders, or documents by or from other offenders destined for the Court.

Furthermore, *Id.*, p. 120, V, A, handling of denied items lists only two options:

1)   Mail the item to any person at the offenders' expense, or

2)   Destroy the item only with the offenders written permission.

The Defendants and their mailroom staff with direction from Huntsville chose to disregard policy and harm the Plaintiffs.

Page 25

As the lead filing Plaintiff in this suit, hundreds of documents and exhibits have been mailed by Plaintiff Sain to Tim's Copy Service, then onto the Court and Parties without incidents of this type except as detailed in the above sub-sections. The fact that these documents are now in the possession of the Defendants, without the Court having copies, violating the policy statements in both BP-03.81 and the I-202 Offender Orientation Handbook, demonstrates the level to which the Defendants will go to prejudice these proceedings. *See*: Ex. 272.

Defendants have again shown their propensity to delay, hinder, and stop the Plaintiffs in filing documents with the Court. Plaintiffs compose and write rough drafts, publish the drafts and verbally edit them via monitored and recorded phone calls, 216 hours and 21 minutes since this case was filed in November 2018. This is the third confiscation of finished legal product at the moment of sending it to the Copy Service. This instance as were the others, were not processed as legal material per policy. Rules governing offender ATC, searches, p.7 of 17, II, A and B. *Also See:* I-202, Doc. 59, Ex. HH, p. 125, II, A and B.

Plaintiffs find that the all encompassing edict for legal affairs, BP-03.81, Doc. 96-2, and the Offenders Orientation Handbook, I-202, Doc. 59, Ex. HH, when compared to the ATC Policy Manual, *See*: ATC Table of Contents, Ex. 197, ATC-030, and ATC-055, Ex. 267, and others are completely ambiguous and conflict on many points. Add in the lack of official legal material awareness with the Mailroom policies and the improper manner these issues are handled, it boggles the mind to know which departments policy is trump, all within the same organization.

The Plaintiffs experience time and time again, the acknowledgement that Unit Staff know the Plaintiffs strategy and documents as soon as they are composed.

All the above demonstrates the extent the Defendants will go to violate the Plaintiffs **First Amendment** rights without thought of propriety nor remorse.[1]

r.   January 8, 2020 - Ronald Catt separated from other Plaintiffs.

Catt is an inmate at Pak Unit who is helping the Plaintiffs with their litigation in this matter. After the Pack Unit Administration discovered that Catt was housed in the same Dorm as Plaintiff Sain (D-6-30 & D-6-44) they relocated Catt for the purpose of disrupting and interfering in the progress of this litigation.

s.   January 27, 2020: TDCJ/Mailroom will confiscate any incoming documents with other inmate names, ID numbers, or Info.

The Pack Unit Mailroom received a USPS shipment from the Plaintiffs' Copy Service containing the official copies of Plaintiffs' recent Court submissions, Docs. 157, 158, 159, USCA Motion to Stay, and Defendants' Doc. 152. The Mailroom withheld deliveries of these documents to Plaintiffs Sain and instead issued a summons to the legal Mail window the following week.

Sains' incoming mail was withheld and determined the USPS Express Mail envelope would not be allowed into his possession. This sudden new interpretation of the rules is in contradiction to dozens of previous receipts during the course of this litigation and before. This is evidenced by the various inmates continued utilization of these USPS envelopes as day-to-day storage and transport envelopes for legal documents. This event, special holding and pick-up, resulted in an additional three-day delay in the receipt of Plaintiffs legal papers. And, against TDCJ policy, no confiscation papers were generated, (previously, if a packaging issue arose, the papers were

---

[1] BP-03.81 - Rules Governing Offender Access to the Courts, Counsel, and Public Officials.
https://www.tdcj.texas.gov/policy/atty_forms.html

enclosed in a brown envelope and issued to Sain via normal mail call the previous week, without delay). Plaintiffs believe this is another attempt to hinder, delay, and retaliate.

Additionally, Sain received verbal notice from Pack Mailroom worker, Ms. Sutton, that he and the other Plaintiffs will not be allowed to receive any documents with inmates names, ID numbers, or other info, other than their own, regardless of the inclusion within the suits' papers. This issue of inmate names and ID numbers was addressed in § j. above. Ms. Sutton said she "understood our need for the documents", as she had, "read them all but this was Huntsville's decision." These are Court pleadings exactly as filed with the Clerk. No written notice as per BP-03.81 was provided to the Plaintiffs that their legal materials would be or had been read. Ms. Sutton went on to state, "A Court order would be necessary for ya'll to receive future documents with their inclusions." Without the benefit of transmitting and receiving legal papers detailing and arguing individual and group compliance issues, the Defendants have essentially stymied all progress the Plaintiffs could make in litigating their case. While the Pack Unit Mailroom ignores the processing responsibilities detailed in BP-03.81.

Plaintiffs believe this is another Defendant attempt to hinder, delay, and retaliate against Plaintiffs for filing and pursuing this litigation. In their own words, "A Court order is needed." Continuing: Daily quota of disciplinaries to be written per guard to be implemented.

Numerous staff have indicated that they as a group, were mandated to each write a minimum of three (3) disciplinary cases during each of their shifts. Statewide, the Defendants have previously asserted that this illegal practice was both prohibited and forbidden, yet the I.G. found multiple units utilizing this practice of intimidation and evidentially stated the practice was eradicated. The quota system for disciplinaries is now active on the Pack Unit. Further intimidating and harming the Plaintiffs.

t.  CONCLUSION OF THE ABOVE

As the above abbreviated chronology of events and actions illustrate, due to the specific misconduct of the Defendants, Staff, and Officers; Plaintiffs have continued to be harassed, retaliated against, interfered with, punished and otherwise penalized as a result of participating in this litigation and specific prohibitions of same misconduct as detailed in Defendants own policies and documents, *See*: ATC Policy Manual, BP-3.81, Doc. 96-2, Ex. B, p. 1; and Offender Orientation Handbook, 1-202, Doc. 59, Ex. HH, p. 121.

Defendants direct misconduct as detailed above culminating in the relocation of the primary Plaintiffs to the Pack Unit is another attempt to harass and hinder the Plaintiffs by separating them and hindering their **First Amendment** Rights to Access To Courts (ATC), a major roadblock with considerable impact on this litigation.

Plaintiffs ask the Court to take Judicial Notice of the issues listed above, and although these are only the highlights, they illustrate a definite and defined pattern of denying Plaintiffs Access To Courts. It should also be noted that Defendants misconduct increased to specific instructions to Staff by Warden Dobbins to, "write disciplinaries on the Plaintiffs if you even think they've broken a rule." And, the Staff complied with this additional misconduct. This occurred during the time of Plaintiffs responses and replies to Defendants Motion For Summary Judgment, and markedly intensified following the Court's partial denial of the Defendants Motion For Summary Judgment. Culminated, but not ending with the expedited relocation of Plaintiffs to Pack.

## IV.    RETALIATION

Prison officials may not retaliate against prisoners for using the courts or trying to do so, whatever the form of retaliation. The Supreme Court has explained, "the reason why such retaliation offends the Constitution is that it threatens to inhibit exercise of the protected

right...retaliation is thus akin to an 'unconstitutional condition' demanded for receipt of a governmental provided benefit." *Crawford-El v. Britton*, 523 U.S. 5 74, 588, (1998). Moreover, the Court went on to say that retaliation may be remedied by an injunction.

Prison officials may not deliberately delay mailing legal papers when they know that such delay will effectively deny a prisoner access to the Courts. *Jackson v. Proconier*, 789 F.2d 307, 310-11 (5th Cir. 1986).

Retaliation claims require a prisoner to allege, (a) a special constitutional right; (b) the defendants' intent to retaliate against the prisoner for his exercise of that right; and (c) there is a casual connection between the first two elements. *Hart v. Harrison*, 343 F.3d 726, 764, (5th Cir. 2003).

A.   SPECIAL CONSTITUTIONAL RIGHT

First, regarding protected conduct, the Supreme Court has stated the right to file a court action might be said to be a prisoners' remaining most "fundamental political right because preservative of all rights." *McCathy v. Madigan*, 503 U.S. 140, 153, (1992). The Court has also recognized the Privileges and Immunities Clause, **Fifth Amendment** Due Process Clause, and **Fourteenth Amendment** Equal Protection & Due Process Clauses. *Christopher v. Harbury*, 536 U.S. 403, 415 n. 12 (2002).

In *Crowder v. Sinyard*, 884 F.2d 804, 811 (5th Cir. 1989). In its: most obvious and formal manifestation, the right protects one's physical access to the courts. Thus, for example, prison officials cannot refuse to transmit, or otherwise block, through procedural devices, the transmission of legal documents which prisoners wish to send to the Courts. *See*: *Ex Parte Hull*, 61 S.Ct. 640 (1941).

Nor can they take other actions - such as taking or destroying legal papers - that have a similar effect. *See: Houston v. Lack*, 108 S.CT. 2379, (1988); *Morello v. James*, 810 F.2d 344, 346 (2nd Cir. 1987); *Sigafus v. Brown*, 416 F.2d 105, 107 (7th Cir. 1969). There is a final category of cases as to which the Courts have found the constitutional right of access to the courts to be implicated, drawing again from the prison context, Courts have held that if state officials in some way retaliate against an individual for seeking redress through the courts, they have violated that person's right of access to courts. *See: Harrison v. Springdale Water & Sewer Comm'n*, 780 F.2d 1422, 1428 (8th Cir. 1986).

A substantive right of access to the courts has long been recognized. *Bounds v. Smith*, 97 S.CT. 1491, 1494 (1977).

The Supreme Court has held, "the right to sue and defend in the Courts is the alternative of force. In an organized society it is the right conservative of all other rights, and lies at the foundation of orderly government, it is one of the highest and most essential privileges of citizenship...granted and protected by the federal constitution." *Chambers v. Baltimore & Ohio R.R. Co.*, 28 S.CT. 34, 35 (1907).

*Brewer v. Wilkinson*, 3 F.3d 816, 821, n5 (5th Cir. 1993). This Court has likewise recognized the relationship between the **First Amendment** and the constitutional right of "access to the courts". *See:* e.g. *Taylor v. Sterrett*, 532 F.2d 462, 470-72 (5th Cir. 1976).

In *Wilson v. Thompson*, 593 F.2d 1375, 1387 (5th Cir. 1979), we stated, "[i]t is by now well established that access to the Courts is protected by the **First Amendment** right to petition for redress of grievances."

Page 31

Primarily, the fact that Plaintiffs are incarcerated and the initial filing of the complaint itself, is prima facie evidence of Plaintiffs protected conduct under the above Clauses.

B.    DEFENDANTS INTENT TO RETALIATE:

Next, the Defendants adverse action and retaliation, as set forth above in the chronology, begins on July 29, 2018 when Captain Brantly, Luther Unit, discovers through an unauthorized reading and confiscation of Plaintiffs legal materials, information concerning a prospective suit. Before this date it can be fairly said that most of the Plaintiffs and Inmate Legal Assistants were not on the disciplinary radar of Luther Unit Administration, Rank, and Correctional Officers.

Thereafter, lead Plaintiff Sain experiences no less than 14 separate actions of retaliation with frivolous disciplinaries between November 14, 2018 and September 30, 2019, unauthorized confiscations and denial of Access To Courts. Here, courts have found that the filing of false disciplinary charges are enough to support an adverse retaliation claim. *Hart*, 343 F.3d. at 364.

Additionally, to pass the "de-minimus" bar of retaliation, the Fifth Circuit has looked to Sister Circuits for guidance. *Morris v. Powell*, 449 F.3d 682, 684, (5th Cir. 2006). Therefore, the threats by Officer Brown characterized above, are sufficiently adverse to support a retaliation claim. *See*: *Burgess v. Moore*, 39 F.3d 216, 218, (8th Cir. 1994). Therein, the threats demonstrated by Brown and his manner in which he acted was intended to intimidate, deter and "chill" a person of "ordinary firmness" in the exercise ' of Plaintiffs Constitutional Rights to Access the Courts. *Morris* F.3d at 685-86.

As set forth above, the hasty expedited relocation of Plaintiffs has caused injury beyond repair. Likewise, in *Parker v. Carpenter*, 978 F.2d 190, 192-93, (5th Cir. 1992), the Court held that retaliation in the form of transferring the inmates to another prison, and analogous in this case,

is sufficient to support a retaliation claim, *See*: *Morris v. Powell*, 449 F.3d 682, 685, (5th Cir. 2006).

Prison officials must not use transfers or segregation to restrict your Access To Courts. *Allah v. Silverline Inc.*, 229 F.3d 220 (3rd Cir., 2000).

You cannot be transferred to punish you for filing a lawsuit, whether for yourself or someone else. *Thadeus-X v. Blattga*, 175 F.3d 378 (6th Cir., 1998).

C.    CASUAL CONNECTION:

The facts and record exhibits set forth above in the Chronology of Retaliatory Events, demonstrates multiple instances of unauthorized confiscation of legal materials. The Sister Circuits have found similar confiscations and destruction of property sufficiently adverse in a claim of retaliation. *Thomas v. Evans*, 880 F.2d 1235, 1241-42, (11th Cir. 1989) (confiscation of legal materials); *Cody v. Weber*, 256 F.3d 764, 768, (8th Cir. 2001) (holding the advantage the defendants obtained by reading the plaintiffs private legal papers constituted actual injury); *Goff v. Nix*, 113 F.3d 887, 890-92, (8th Cir. 1997) (holding that inability of co-plaintiff to coordinate recruitment of witnesses for trial "impeded" a non-frivolous claim, and that Plaintiff who "lost legal papers critical to his proceeding" was actually injured).

For a "complain of harassment" is enough for a claim. *Calhoun v. Harcone*, 312 F.3d 730 (5th Cir., 2002).

These citations above are representative of the present claim Plaintiffs make for this injunction to restrain Defendants from further infliction of legal injury upon Plaintiffs.

D.    NO ADEQUATE REMEDY AT LAW

The irreparable injury is one that cannot be prevented or fully rectified by a final judgment following trial or harm that cannot be undone by awarding of monetary damages.

In this case, there is no adequate remedy at law because the legal remedy is merely illusory and effective legal relief cannot be obtained without filing multiple lawsuits, *See*: *N. CA. Power Agency v. Grace Geothermal Corp.*, 469 U.S. 1306, 1308, (1984).

In the first instance, the harm cannot be undone by awarding of monetary damages and the legal remedy is merely illusory because, the suit was brought against the Defendants in their official capacities against the TDCJ. An official capacity suit is, in reality, a suit against the governmental actor. The TDCJ is an Executive Department of the State of Texas. Therefore, Plaintiffs contend that money damages are unavailable against the State of Texas in this action. The shortest, most direct route to that result evolves out of the fact that neither a state noir its officials in their representative capacities are "persons" within the meaning of 42 U.S.C. § 1983 with respect to actions for damages. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, (1989). In sum, § 1983 does not allow for monetary damages against Defendants in their official capacities and thereby awarding of monetary damages illusory.

By and large, because Plaintiffs and Inmate Legal Assistants are not able to recover monetary damages, they will be forced to file multiple, individual suits against the Defendants in their individual capacities, *See*: *Wilson v. Illinois S. Ry.*, 263 U.S. 574, 576-77, (1924) (no adequate remedy at law when multiple lawsuits would be necessary and apportioning damages would be difficult and when potential monetary damages was considered illusory because recovery would be so difficult). *See*: Plaintiffs Response In Opposition To Defendants Motion To Dismiss Plaintiffs Remaining Claim as Moot, Doc. 156, Plaintiffs Supplement To Their Response... Doc.

158, and Plaintiffs Motion Of Joinder Of Parties, Doc. 159. Initial Luther residents who are prepared to file suit if this is dismissed.

E.    LIKELIHOOD OF SUCCESS ON THE MERITS

There is a substantial likelihood that Plaintiffs will prevail on the merits. First, Plaintiffs have survived the Defendants initial Motion for Summary Judgment, dismissing some claims. This is primarily evidenced by the Courts "Memorandum Opinion and Order." Therein, the Court goes on to set for further proceedings to address the remaining claims indicating a likelihood of success on the merits. Doc. 120. As these claims survived summary judgment, the suit cannot be considered frivolous.

Second, most recently, the Court granted Plaintiffs "Request For Leave of Court to Proceed With Their Appeal Using The Original Record Doc. 137. Additionally, the Court granted Plaintiffs "Motions Requesting Leave of The Court to Appeal IFP." Doc 138.

Finally, the facts, evidence and Defendants are the same or very similar to a suit filed against the "Pack Unit", just two miles distant on the same parcel of land, *Cole v. Collier*, 4:14-cv-01689. Therein, the Court found that, despite a significant risk of harm faced by the men at the Pack Unit, Defendants (TDCJ) have done the bare minimum; they implemented mitigating measures that they knew, or should have known, were ineffective given the extreme heat at the Pack Unit, and they ignored the risk of harm faced by the population they serve. "Accordingly, Plaintiffs (Pack Unit) have shown that Defendants are deliberately indifferent, and as such, Plaintiffs (Pack Unit) have shown a likelihood of success on the merits of their **Eighth Amendment** claim." *See*: *Cole v. Collier*, 4:14-cv-01689, (S.D. Tex., Houston Div., 2018) Doc. 737, p 83.

The Defendants and their Counsel are notorious for committing crimes of falsifying government documents, cover-ups, and bold-faced lies, the present considerations for, and by, Judge Ellison for contempt charges and sanctions, exemplify the lengths to which Defendants and Counsel will go to misrepresent good faith and discovered and detailed by the Cole Counsel. *See: Cole v. Collier*, 4:14-cv-01698, Ex. 189, (Doc. 1488), p. 2-12. *See also: Id.* Ex. 187 (Doc. 1448), Ex. 188 (Doc. 1449), Ex. 190 (Doc. 1489), Ex. 191 (Doc. 1494), Ex. 262 (Doc. 1495), and Ex. 263 (Doc. 1504). *Also See:* Ex. 260 and Ex. 261.

Presently, the Defendants are under sanction consideration due to the continued violation of the Pack Unit settlement and the Plaintiffs **Eighth Amendment** Rights. Does anybody believe they will act differently in this matter, we think not. *See: Doran v. Salem Itin. Inc.*, 422 U.S. 922, 931-32, (1975), *See also: Bluefield Water Ass'n v. City of Starkville*, 577 F.3d 250, 252 53, (5th Cir. 2009).

Sister court's have found when there are disputed material facts as to whether the Defendants were picking off the Plaintiffs by targeting them for transfer. The Court found the case was not moot for another reason, it pointed to the "inherently transitory" exception, which requires (1) the injury must be so transitory that it would likely evade review by becoming moot before the District Court could rule on class certification and (2) it must be clear that other potential members are suffering injury. *Dodson v. Core Clinic*, U.S.D.C. (M.D. Tenn.), case no. 3:17-cv-00048; 2018 U.S. Dist. LEXIS 171132.

F.    BALANCE OF HARDSHIPS

The harm faced by Plaintiffs outweighs the harm that would be sustained by the Defendants if the preliminary injunction were granted. *Yakus v. United State*, 321 U.S. 414, 440, (1944), *also*; *Opulent Life Church v. City of Solly Springs*, 697 F.3d 279, 297, (5th Cir. 2012).

Here, the harm sustained by Plaintiffs is significantly greater than any perceived harm to the Defendants. First, the only access Plaintiffs had with each other was at the Luther Unit. By scattering, dispersing and secluding Plaintiffs, the Defendants have effectively closed conferring with each other.

Above all, the defendants will not suffer harm from any added security, administrative, or operations due to the injunction. The injunction merely asks for a return to the Luther Unit and that all staff therein comply with the policies set forth by the Defendants, and the hours per session and ability to confer without undue delay or bureaucratic "red-tape" from submissions be halted and extra time be allowed **based on the needs of the inmates**. Three two-hour sessions per day are staffed, available, and lightly populated by inmates each day at both the Luther and Pack Units.

G.    EFFECT ON THE PUBLIC INTEREST

The granting of injunctive relief will not adversely affect public policy or public interest, nor will the relief effect non-parties, *See*: *Winter*, 555 U.S. at 24, *also*; *O'Donnell v. Harris City, Texas*, 2017 WL 1735456 81, 83, (it is always in the publics interest to prevent the violation of a parties constitutional rights). The rights of Plaintiffs are continuously violated by the conditions of confinement, retaliation, and overall harassment of Plaintiffs, and misconduct by TDCJ Officers. Who are also Defendants in this suit. Accordingly, this factor should weigh heavily in favor of granting a preliminary injunction.

Finally, there are three additional considerations in this case when deciding the constitutional violations.

First, the nature of competing interests of Plaintiffs and Defendants, argues against unfettered and unchecked retaliation, confiscation of legal materials, and overall denial and

harassment surrounding the Law Library. On Plaintiffs side there is the "Privileges and Immunity", "Petition", "Due Process", and "Equal Protection" Clauses of the U.S. Constitution. The retaliation, punishment, impediments, and harassment have seriously undermined those constitutional rights.

The other side includes the Defendants interest in securing the prisons they operate as well as the publics interest. Requiring the Defendants to comply with their own policies and procedures will not inevitably undermine those interests. Nor do those interests enjoy constitutional protections. Rather, compared to the protections of the Constitutional Clauses set forth above, those interests would seem to lie further from the heart of a fair, effective, and constitutional prison system.

Second, Plaintiffs have found no decision by the U.S. Supreme Court, or any other state court authorizing the unfettered and unchecked retaliation, confiscation of legal materials, denial of Access To Courts, and relocation for the purpose of subverting the claims brought by Plaintiffs.

Third, as a practical matter, to accept the Defendants misconduct above could well erode the protections of the Constitutional Clauses previously chronicled to a considerably greater extent than has so far been indicated. To permit the Defendants' misconduct would unleash a principle of Constitutional Law Violations that would have no obvious stopping place, *See: Matthews v. Eldridge*, 96 S.CT. 893 (1976).

Access to Courts entails not only freedom to file pleadings but also freedom to employ, without retaliation or harassment, those accessories without which legal claims cannot be effectively asserted. The Plaintiffs have "set forth" a chronology of events from which retaliatory animus on the part of Defendants can arguably be inferred. Akin to Plaintiffs herein, State and Federal Courts have held, when an inmate alleges an ongoing pattern of denial of access and interference, actual

injury need not be shown. *Brewer v. Simental*, 268 S.W.3d 763, 774 (Tex. App-Waco, 2008), citing, *Woods v. Brewer*, 60 F.3d 1161, 1166, (5th Cir. 1995), and *Ruiz v. Estelle*, 679 F.2d 1115, 1153, (5th Cir. 1982).

Additionally, when there is an ongoing pattern of denial or interference, actual injury need not be shown under U.S.C. § 1983. Plaintiffs have provided direct evidence of Defendants motivation and alleged "Chronology of Events" which retaliation is plausible. *Leggett v. Comer*, 280 Fed. Appx. 333, (5th Cir. Tex. 2008).

## V.    CONCLUSION

First, relevant facts, chronology of retaliatory events, with supporting record exhibits, conclusively establishes a systematic and institutional pattern of misconduct and retaliation espoused by the Defendants. Thereby, the misconduct and retaliation engaged by the Defendants is significant enough to warrant the granting of this preliminary injunction.

Next, the laws and Constitution of the United States are clear that the right to file court actions are a prisoners' most "fundamental political right because preservative of all rights." Additionally, several United States Circuit Courts of Appeals have found that unauthorized confiscations, denial of Access To Courts, hasty transfers, threats, and spurious disciplinary' cases are sufficient enough to demonstrate actual injury.

With the above detailed factors involving the Defendants intentional and prolonged efforts to inhibit and halt all Plaintiffs legal communications, Plaintiffs believe that it is also imperative they receive appointed counsel to redress, limit, and resolve these Constitutional violations.

Finally, the above misconduct and retaliatory acts committed by Defendants has prejudiced Plaintiffs ability to fully litigate their Constitutional Right of Redress to challenge the conditions of confinement in the TDCJ.

## VI.    PRAYER

The named Plaintiffs and all those similarly situated at the Luther Unit, whom as Plaintiffs in their own right, pray the Court in its wisdom GRANTS the Plaintiffs request for relief. And in this relief, provide a means of allowing Plaintiffs claims to be heard to fruition instead of allowing Defendants to assume the least expensive path rather than avoiding addressing the true Constitutional violations. Every inmate endures, the **First**, **Fourth**, **Fifth, Eighth**, and **Fourteenth Amendments** violations that continue at the Luther and Pack Units.

Respectfully Submitted,

Dated: February 4, 2020

## CERTIFICATE OF CONFERENCE

Whereby their signatures below, Plaintiffs do hereby certify/declare that a conference is not possible because Plaintiffs are incarcerated in Texas Department of Criminal Justice, Institutional Division, and are proceeding Pro Se in this cause. Plaintiffs will not speculate on whether the Defendants oppose this motion.

## CERTIFICATE OF SERVICE

Whereby their signatures below, Plaintiffs do hereby certify/declare that true and correct copies of the foregoing document was forwarded via U.S. First Class Mail, postage pre-paid, to the following parties:

a. Bryan Collier
   TDCJ Executive Director
   Texas Department of Criminal Justice

b. James McKee
   Warden
   O.L Luther Unit (P2)

c. Texas Department of Criminal Justice
   c/o Bryan Collier
   TDCJ Executive Director

Service was perfected to the above Defendants through their Attorneys of Record for Service:

**Todd Disher**
Attorney In Charge
Office of Attorney General of Texas
209 W 14th, 8th Floor
Austin, TX 78701

**Leah Jean O'Leary**
Office of the Attorney General
Law Enforcement Defense Division
P.O. Box 12548 Capital Station
Austin, TX 78711-2548

## CERTIFICATE OF MAILING

Whereby their signatures below, Plaintiffs do hereby certify/declare that the foregoing document was delivered to the United States Post Office for processing (U.S. First Class postage, pre-paid).

Pursuant to Fed. R. App. P. Rule 25 (a)(2)(A)(iii), "Mailbox Rule," Pro se documents filed at the time they are placed in the institutional mailing system for processing.

## INMATE DECLARATION

We, the Plaintiffs listed below, being over 18 years of age, of sound mind, capable of making this declaration due to the facts that we: suffer from and/or experience(d) one or more of the conditions described; attended consultations with qualified medical and other professionals; having been trained by medical personnel to recognize and treat complications due to illness/heat/cold; having studied materials listed under Fed. R. Civ. P. Rule 902; through our personal observations; and due to belief and empirical knowledge that the facts stated above; pursuant to 28 U.S.C. § 1746, do hereby declare under penalty of perjury that the foregoing is true and correct from personal knowledge.


Executed on February 4, 2020

JOHN SAIN, Pro Se
TDCJ ID# 01373168
Wallace Pack Unit
2400 Wallace Pack Road
Navasota, TX 77868-4567

SALVADOR CAPUCHINO, Pro Se
TDCJ ID# 01675667
Wallace Pack Unit
2400 Wallace Pack Road
Navasota, TX 77868-4567

DAVID CUMMINGS, Pro Se
TDCJ ID# 02153663
Wallace Pack Unit
2400 Wallace Pack Road
Navasota, TX 77868-4567

PHILLIP GULLETT, Pro Se
TDCJ ID# 01672020
Wallace Pack Unit
2400 Wallace Pack Road
Navasota, TX 77868-4567

DAVID WILSON, Pro Se
TDCJ ID# 01648044
Wallace Pack Unit
2400 Wallace Pack Road
Navasota, TX 77868-4567